■ GOVERNMENT EMPLOYEES INSURANCE COMPANY, Respondent, v. LESLIE GOLDSCHLAGER, Appellant, et al., Defendant.— In a proceeding pursuant to CPLR 7503 to stay arbitration which was sought by appellant under an automobile insurance policy, the appeal is from a judgment of the Supreme Court, Kings County, entered February 27, 1973, after a nonjury trial, which granted the application and permanently stayed the arbitration. Judgment affirmed, without costs. Trial Term determined that the claimants (appellant and the passenger in his automobile) failed to sustain their burden of proving by a fair preponderance of the credible evidence that there was " physical contact between claimants' automobile and an automobile, the owner and/or driver of which was either unknown or uninsured." We disagree with Trial Term's factual determination and conclude, based on the entire record, that sufficient proof of physical contact between appellant's vehicle and the wheel which had become detached from the unidentified vehicle was adduced at the hearing to support a finding, which we here make, that the claimants met their burden in that regard. However, we are constrained to affirm by reason of the determination in *Matter of Smith* [*Great Amer. Ins. Co.*] (29 N Y 2d 116). In that case Judge Breitel (now Chief Judge) said (pp. 119, 120) that, to comply with the " physical contact" requirements set forth in section 617 of the Insurance Law, " the initial impact must * * * be that of a collision between the unidentified vehicle with the claimant, [or] the vehicle occupied by him " and that objects cast off or falling from a vehicle " such as parts of the vehicle" do not meet the " physical contact" requirements. Hopkins, Latham and Shapiro, JJ., concur; Gulotta, P. J., and Cohalan, J., dissent and vote to reverse the judgment and to deny the application, with the following memorandum: We agree with the reversal of Trial Term's factual finding to the effect that there was insufficient evidence of physical contact between appellant's automobile and the other car whose owner and/or driver is unknown, but we do not agree that an affirmance is mandated by the holding in *Matter of Smith* [*Great Amer. Ins. Co.*] (29 N Y 2d 116) and would reverse the judgment under review. A brief recital of the facts is necessary for an understanding of our position. On the morning of September 17, 1971 the appellant, Leslie Goldschlager, was driving a Datsun automobile in an easterly direction on the Belt Parkway in Brooklyn. Defendant Nancy Klotz was his passenger. Suddenly, a tire mounted on a wheel came bounding from the westbound lanes across the one-foot-high rail divider, striking the Datsun, first in the front grill, then bouncing up into the windshield. It continued on, striking the roof of the car, leaving a longitudinal crease from front to back. Goldschlager lost control of the Datsun, which turned over, injuring both him and his passenger. Shortly thereafter, a car with its left front wheel missing was found abandoned

and without license plates near the scene of the accident on the right shoulder of the westbound roadway. The abandoned car was a 1962 Valiant automobile which was eventually towed away and sold for scrap, but it was never possible to establish who the owner or driver was. A claim was duly made against the petitioner insurance company under the uninsured motorist endorsement of the insurance policy covering the Datsun and the insurance company's application for a permanent stay of arbitration resulted in the judgment under review. Testimony from a disinterested witness actually established rubber skid marks on the roof of the Datsun which corresponded with the tread on the Valiant's tire. Thus, in an area of difficult proof the source of the accident to the Datsun was established almost beyond cavil. Although section 617 of the Insurance Law requires *physical contact* between the hit-and-run vehicles and the vehicle carrying the claimant, case law has established that the contact need not be direct. In the leading case of *MVAIC* v. *Eisenberg* (18 N Y 2d 1) the Court of Appeals permitted a recovery where the claimants' car was struck by a car coming from the opposite direction and which had been pushed across the center divider by a hit-and-run vehicle, although these facts did not literally meet the statutory test, since there had been no actual physical contact between the hit-and-run car and the claimant's car. Looking to the rationale behind the statute, which is designed to protect innocent victims yet at the same time prevent fraudulent claims and the shifting of blame for accidents to so-called "phantom" hit-and-run cars, the court found that the purpose and intent of the enactment was served by accepting as sufficient a substantial but *indirect* physical contact with the claimant's automobile, albeit not of the exact nature described in the statute. It seems to us that accepting a substantial physical contact between an *integral part* of the offending automobile itself and the claimant's car as sufficient, as in the present case, involves considerably less of a departure from the statute than was permitted in *Eisenberg* (*supra*). We would have no difficulty with this case were it not for some of the language used by way of dicta in *Matter of Smith* [*Great Amer. Ins. Co.*] (29 N Y 2d 116, *supra*). That case involved a hit-and-run claim based on some snow and ice which became dislodged from the roof of a tractor-trailer as it proceeded along the roadway and allegedly slid off, striking the plaintiff's automobile. In refusing to extend the *Eisenberg* doctrine to the facts of that case, the court indicated that the absence of an initial *collision* was a most important factor. However, there is nothing in the statute requiring a *collision*. We could infer such a requirement perhaps as a concomitant of the required *physical contact*, but even then there is nothing requiring *two* collisions, i.e., one to precede the one that takes place when a car or an integral *part of it* comes into *physical contact* with another car. Whether the *part* is still attached or comes flying through the air, it seems to us, can make little difference in principle, although in the latter case it might present some difficulties (not here present) in carrying the burden of proof. In the final analysis, in every accident it is always *part* of a car which comes in contact with another car, never the whole car. The dicta set forth in *Smith* (*supra*) to distinguish it from *Eisenberg* (*supra*) has the effect of taking a mere happenstance, i.e., the two successive collisions which took place in *Eisenberg*, and making them a *sine qua non* in all cases, although one collision serves as well as two in terms of assuring reliability. With the reasons for the exclusionary rule developed in *Eisenberg*, viz., to deter fictitious claims, too easily contrived in the absence of physical contact, we have no quarrel, but we question the need for a superstatutory test over and above that set forth in the statute itself, which is the necessary result of literally applying the discussion in *Smith* to all cases. The

concurring opinion of Chief Judge Fuld in *Smith* pinpointed the deficiency in that case when he said (29 N Y 2d 116, 122, *supra*) : " Since I believe that the court's opinion goes beyond the necessities of the case, I take the liberty of writing briefly to indicate my rationale and pinpoint the basis for my conclusion. * * * The tractor-trailer itself may not be considered to have ' caused ' the accident. Concededly, it did not collide or come in contact with the claimant's car — or any other (see *MVAIC* v. *Eisenberg*, 18 N Y 2d 1)— and, clearly, there was no 'hit-and-run' vehicle as that term is understood." With the instances of noncoverage discussed in the majority opinion in *Smith*, e.g., pebbles, rocks, dust, or other debris cast up by a vehicle's wheels, we could agree, but with the further observation that not even parts of the speeding vehicle are covered we cannot, and the present case illustrates why, in a very dramatic way. At this stage of the case, discussions of whether the facts indicate negligence on the part of the hit-and-run operator are irrelevant and premature. That is for a future trial or hearing, as the case may be, depending upon whether a qualified or an insured person is involved, but the victim should not be denied a forum on the dubious ground that perhaps the hit-and-run driver was not at fault. As we read *Eisenberg*, it was the physical contact which took place between the pushed car and the claimant's car which satisfied the statute, not the hit-and-run contact, because without the second contact there would have been no valid claim. For example, had the claimant merely become frightened or disoriented by reason of viewing the hit-and-run contact and piled up his car, the sense of *Eisenberg* would have been to deny coverage. Further, in terms of the type of abuse the statute is aimed at, we see a clear distinction between a case where ice, perhaps unwittingly, falls off a passing truck and a case where a person, whose car causes a serious accident, abandons it and removes the license plates so he cannot be traced or identified. This is what the average person would understand a hit-and-run case to be.